May it please the Court, my name is Christopher Leach and I represent the appellant Cory Woodfolk. Your Honors, this case involves a textbook conflict of interest. Mr. Woodfolk's trial attorney represented Mr. Woodfolk's co-defendant and negotiated a plea on behalf of that co-defendant requiring the co-defendant to testify against Mr. Woodfolk. Now, the district court in this case dismissed Mr. Woodfolk's 2254 habeas petition on three erroneous procedural grounds. First, Mr. Woodfolk's petition was timely because the one-year statute of limitations did not begin to run until Mr. Woodfolk received a sentence on his conviction in November of 2008. Second, the procedural default relied on, cited by the 2013 Maryland Appellate Court decision, is inadequate to bar review because that court concluded that Mr. Woodfolk had waived his ineffective assistance of counsel claim by failing to cite it during a period of time in which that conviction in question had been vacated and thus could not be challenged. And third, the procedural default cited by the 2011 trial court decision is inadequate to bar review because it's black-letter law under Maryland law that a habeas petition does not waive an ineffective assistance of counsel claim by failing to raise it on direct appeal. Now, let's jump right to the procedural, not the procedural history, Your Honor, the statute of limitations argument. The AEDPA statute has a one-year limitations period that begins to run. You know, if I had a law court that I wanted to punish, I would assign them this case. What on earth is going on here? Well, you're right. Sorry. Why didn't, and I'm sure you can't answer this, why didn't the state court impose the sentence to run concurrently with the 50-year federal sentence and bring this all to a conclusion? Well, Your Honor, the first, so why they didn't, it's unclear, Your Honor, why they didn't. But separately, there was a period of, there's a period of Probably ineffective assistance right there. Well, Your Honor, separately, there's, in addition to the actual incarceration term that was imposed, there was a period of probation. That's actually what's right now. So just so that Your Honor is clear, I submitted post-trial 28 J letters making clear that Mr. Woodfolk is now, his sentence was changed to be concurrent, but he still has a five-year term of probation. So I'm not sure that that would have changed the outcome. So Mr. Woodfolk still would be in custody under the term. But why wouldn't, in that regard, why wouldn't the probationary term have ended a long time ago? At least under the terms of the commitment order, Your Honor. It starts from, the probationary term begins from the release, release of incarceration. I believe that Release from the state incarceration. It's my understanding, Your Honor, it's my understanding, I'm sorry, Your Honor, it's my understanding that the probationary term begins to run from the release of federal incarceration, not the probationary. But it doesn't say that. It says upon release, right? It says upon release from incarceration, Your Honor. Right. And so it's a state sentence. Yes, it is a state sentence, Your Honor. And if the state of Maryland is Which is non-protonc. Say that again, Your Honor. What is the, in your view, what is the commencement date of his reimposed state sentence? The reimposed state sentence commenced, at least the, I don't actually, I actually don't need to determine that, say, when it was reimposed. The state sentence was reimposed in November 2008. That was the date. November of when? November of 2008. That was when the state sentence was reimposed. My question is, what is the effective commencement date of that reimposed sentence? Your Honor, according to the Maryland trial court, the most recent decision that was issued, I believe that the commitment order and the opinion states, it's in my January 10th letter, Your Honor, I think the opinion makes clear that the commencement date is November 2008, and then it concluded in 2012 pursuant to some time served credits while Mr. Woodfolk was previously in incarceration. That, I believe, is what the Maryland state court held in its most recent decision. And from my understanding of how the Maryland procedure works in this case When did he file his 2254? He filed his 22, the current 2254 petition was filed in 2014, well within the one-year limitations period if you account for the state post-conviction proceedings that came between. So, Your Honor, just to give you a, I'm sorry, not 2014. He filed it in, I believe it was October 31st, 2013. And just the timeline, Your Honor, it's our position that the criminal judgment that we're challenging was entered in November 2008. It was immediately thereafter within a month he filed his Maryland post-conviction proceedings that the continuance which told the limitations period until October of 2013. And Mr. Wood... Hold until October 2013? Yes, there were state post-conviction proceedings and then he filed an appeal from those proceedings. And the trial, there were appeals from those proceedings that didn't fully wrap up until October of 2013. And then I believe the timeline is within a week or so of the Maryland appellate court finally disposing of the case. That was when Mr. Woodfolk then filed his federal petition. So there's very, there's I think maximum probably two months. He filed it well within, you say, within a few weeks. I believe that's what the timeline is, Your Honor. Well, I think there might be only... Well, he's got to get it running from November 2008. Yeah, so not necessarily, Your Honor. So it's our contention that if we, it's our contention that Mr. Woodfolk received... Is your primary argument that November 2008 is when it starts running? Yes, that's our primary argument. And most of the time was told by the state proceedings. There's, by the, exactly. So there's, our primary argument is that Mr. Woodfolk received his sentence in November of 2008. And there is, the state doesn't consent because the state does not contest that after November 2008 post-conviction proceedings told the limitations period. The only difference is the state believes that Mr. Woodfolk's sentence was imposed in 2007. If you recall the way this procedural history works, Your Honors, that in March of 1988 is when the tainted conviction happens. That's the difference between you all. You're saying November 2008 and you're saying sometime in 2007. Exactly. That's, and so our contention is that... And if your 2008's right, it's timely. If their 2007's right, it's not. No, Your Honor. We have an alternative argument. You've got another argument. We have an alternative argument. But your primary argument is the one I... Yes. That is correct, Your Honor. That's our primary contention. Our alternative argument is that if the state's correct regarding the date of the sentence, then the Maryland Appellate Court also referenced the reinstatement of a Maryland sentence reduction proceeding. And it's our contention that that proceeding is a species of collateral review under 2244 that further told the limit... Why is it hard to tell when the sentence was imposed? The reason it's hard to tell when the sentence was imposed, Your Honor, is that the Maryland Court of Appeals is not particularly clear. We actually don't think it's, to be clear, we don't think it's unclear to tell when the sentence was imposed. According to the, it's on page, the relevant page of the record is 225A, Your Honor, and that's where the Maryland Court of Appeals says that what it's going to do is reinstate the March 1988 conviction. That's the tainted conviction. But then what it's going to do is remand for resentencing. And the reason that the Maryland Appellate Court would follow that procedure is under Maryland law, an appellate court does not have jurisdiction to impose a sentence. So they remanded for resentencing, and that's what we believe occurred in November of 2008, Your Honor. What's the date in November? November 12, 2008. 12 November. Can you help me with this? October 1988, the sentence was reduced to 18 months? It was, the incarceration term was reduced to 18 months, Your Honor, but the total, but it was a total of 15-year sentence and all but 18 was, all but 18 months was suspended. That's in October of 2008. By that time, wasn't his sentence almost finished? So that was actually what happened. I believe what happened, Your Honor, is that by that point the imposition of the 18-month incarceration term effectively allowed Mr. Woodfolk to go free that day or shortly thereafter. Why did he appeal that? He appealed that. Why? Well, he did not take a direct appeal from that, Your Honor. He left. What happened was when he was, he was then on a probationary term concurrent to that term of incarceration, but then he was picked up on a federal charge in the 90s, and so he was still then, he had a reimposed violation of probation term during that time period, and that was the sentence that he attacked. But he attacked it, he attacked the revocation of the violation of probation by attacking the October 1988 plea. It's a little, the way the Maryland courts dealt with this issue is understandably somewhat convoluted, Your Honor, but basically what the Maryland court determined was that at the end of the day, what occurred in October of 1988 was null and void because the trial court lacked jurisdiction to vacate the March 1980, the tainted plea, the tainted conviction under the procedure that they used there. Isn't there some kind of double jeopardy there in a sense? You get 18 months and then they set that aside and give you now five years. So, Your Honor, the issue was, you're talking with respect to? In 2008 when they set aside, well, they set aside the, they said October 1988, the court didn't have the authority to grant an oral motion for a new trial or whatever, and they gave it to him and he was re-sentenced to the 15, 18 months. Did the court sue his body and say they couldn't do that? I can't imagine he asked for that. So the, it appears that at some point it was determined in the trial court that what would end up happening is that Mr. Woodfolk would be re-sentenced to the terms that he was sentenced to in March of 1988 under the tainted plea and that Mr. Woodfolk would then attack, because basically Mr. Woodfolk's primary contention was that the entire conviction is null and void because of the conflict of interest that I discussed earlier at the outset. So what I believe occurred. That's the issue you've never had resolved. That's the issue you've never had resolved. That's what you were trying to get to. That's what I'm trying to get to, Your Honor. And so I think, so just to answer Your Honor's question with respect to the actual, so with respect, so I'm sorry, Your Honor, I lost. I'm just saying to get after that, you mean you sacrificed an 18-month sentence to go back to a five-year sentence to litigate whether or not there was a conflict of interest? And you've already done the time? So, honestly, albeit, Your Honor, my client represented himself pro se, I believe, in that particular State Appellate Court decision. I was not privy to the legal strategy that was involved in those proceedings. I can't understand that at all. But regardless of the reasons for why they came to be, in 2007, Maryland Appellate Court reinstated the conviction but then remanded for resentencing. As Judge King said, it's our contention that at November 2008 is when the sentence was imposed. Now, what should have happened, what should have happened, and Judge Gregory is absolutely correct, the Court of Special Appeals of Maryland did all this on their own. He was not represented, right? I believe that was pro se. He filed a pro se application for leave to appeal from the denial of post-conviction relief, and the Court of Special Appeals of Maryland came up with this solution in search of a problem, if I can say that. And what should have happened in front of Judge Glenn when it went back is Judge Glenn should have simply reentered the March 1988 judgment and commitment. That's what should have happened. They clearly misunderstood because the Court of Special Appeals called it a resentencing. But there really was no need for a resentencing. There was already a sentence in place which was a lawful sentence, the March 1988 sentence. You agree with that? Apart from the conflict of interest now. So, Your Honor, I don't contest that in the abstract that particular sentence was, but, Your Honor, at that point what the Maryland Court of Appeals appeared to do was not reimpose the sentence. They said we were going to reimpose a conviction and then remand for resentencing. But the conviction was never vacated by either court. The conviction always stayed there. And there's that weird sentence at the end of the Court of Special Appeals opinion sort of telling the state, don't worry about it, you don't have to retry this case. Well, they never tried the case. He pled guilty. The conviction, it seems to me, was always in place. And all Judge Glenn had to do when it went back was say, okay, Judge Burns didn't have the authority to do what he did, which was to say to Mr. Woodfolk, why don't you withdraw your motion for a new trial, excuse me, withdraw your petition for sentence review, modification of sentence, make an oral motion for a new trial, which we now know and should have known back then that that wasn't allowed under Maryland law. He already had a sentence. Here's my question, which really gets at what I think Judge Gregory was getting at as well. The total sentence he faced, five plus five, five active incarceration of the ten years and the five-year probation. Why shouldn't we regard that as having commenced back in March of 1988? Let me just finish. I'm sorry. Because it seems to me if that's right, and maybe it's not, this whole case came to an end sometime while he was serving his federal sentence in about 1998. Your Honor, the reason why that isn't the case, one, is that during the pendency, well, during the timeline you're suggesting, well, Mr. Woodfolk was in incarceration in 1998. He could not have challenged the March 1988 conviction. That's my point. If you're serving a term of probation, if you're serving three years for a probation violation in federal custody, what's wrong with that? Your Honor, these are – You see what I'm getting at? He got the five years active back in 1988. He got released on that at some point. He committed the federal offense, convicted of federal offense, apparently goes back before a state judge who imposes a three-year active sentence for violation of probation, correct? Yes. What was the date of that sentence? That was in 1994. 1994. So I don't understand why this whole thing comes to a complete end before the millennial. So the reason – Why are we even thinking about this case in 2000? We're thinking about – The case is over. Your Honor, I'd say the case is not over, and the reason is that at this point, Maryland still has a five-year probationary term that is connected to a tainted guilty plea. And, Your Honor, even assuming – Why hasn't the probation – the five-year probation term expired? Because the effective date of any sentence that was imposed upon him was March of 1988. Your Honor, it's my – Your Honor, it's my – So the reason why March of 1988 isn't the relevant time period is, frankly, because that's what the Maryland Court of Appeals has told us. And so at this point, we're taking Maryland law as a given. And so even under your timeline, Your Honor, that where – Because the statute of limitations is whether or not Mr. Woodfolk could have actually challenged this conviction at that time. The conviction at issue didn't exist until it was resurrected in 2007. So even assuming that we want to assume that the Maryland appellate court reinstated the whole shebang in 2007, we still have my alternative argument that the Maryland court reinstated the sentence reduction motion under – And that's a – I'm sorry, I'm in my time. Even if – even if the whole shebang was reinstated, it didn't exist in the mid-'90s. And so what happened – and so then we have the sentence reduction motion under Wall v. Coley that told us the limitations period. And I explained in our brief why that's the case. But unless Your Honor has further questions regarding – I'm just going to take one prerogative, just ask you one question. Sure. Do you really want us to grant your petition that is on the ineffective assistance of the counsel and then he goes back for a new trial? Wait a minute. And then he's subject to – what's the maximum punishment for the defense? I'm not – I'm not – Well, we know it's at least 10 years. So I'm not sure what the maximum – I'm not sure what the – Do you really want – does he really want to go back and plead not guilty and have a trial on that issue? My client – I can't – I'm just saying, Nick, I'm not going to get into the conversation. I have my client, but he has set – he has indicated desire to proceed with the appeal. I don't want to talk over you. That's why you stop when I talk. I'm sorry. I was asking you – I'm asking you what you – what your client told you. I would never ask you that. That's true. I'm asking do you really – you as his counsel want us to grant that relief that he goes back for a new trial on that offense back in 1988 and be subject to the maximum penalty if convicted for that offense? Is that what you're asking us to do? Yes. Do I personally? No, no. Well, no, I'm sorry, Your Honor. I spoke with my client. This is real difficult. It's not a trick question. You represent your client and you are pleading his cause to us. Yes. All I'm just asking is to make sure, is that what you want us to do? The relief you want, to go back, set aside that, give him a new trial on the 1988 charge? Yes. Okay. Yes, Your Honor. If it requires no further questions. I thought you wanted us first to get to the merits or let the district court get to the merits of the conflict of interest issue. So, Your Honor, I've – To determine whether you get a new trial. So, Your Honor, I've asked – my brief asked the court to reverse and to remand with instructions to grant the writ hour. I've explained that I – You want us to decide the – Conflict. Conflict. Well, that's really kind of overreaching. You may need a hearing or something on that where some lawyers have to testify about that. That's what they had in that Nicholson case that you cite. We had to send it back for protracted hearings on what had happened. So, Your Honor, we – That's what you're relying on here, I thought. But to get past – to get to the issue of the conflict, you've got to get past all these procedural hurdles. Yes, Your Honor. I thought that's what you really primarily wanted to get to, get through the procedural morass and get to the issue of the conflict. Your Honor, that's correct. I do – obviously, if the court is not inclined to reach the merits, getting through the procedural hurdles, as explained in the brief in my opening, is exactly what I would – You would take a remand for a hearing. I will take a remand. Conflict of interest issue. Yes, Your Honor. I will take a remand. And if the court doesn't have any further questions, Your Honor, that will reserve my time for rebuttal. Thank you, counsel. Mr. Kelly. Good morning, Your Honors. If it pleases the court, Edward Kelly on behalf of the government. I've been doing this a long time, and this is one of the craziest procedural cases you'll – at least I've ever seen in my work lifetime at the Attorney General's office. You know, I didn't make an in-custody argument. Can I ask you this? Sure. And perhaps you don't know this. I hope you do. Because how much credit is the petitioner entitled to against the five years? Do you know that off the top of your head? I do not. You do not. No, and I know, you know, a lot of this – when Mr. Woodfolk started his crusade, and I feel necessary to say this on the record, this is some of the best crusade writing I've ever seen. I agree. I agree. And not that I'm advocating for him to get relief, but his pursuit through the court system has been quite impressive. That said, back to your question, I don't know how much credit – and what I was meaning to say is that when he started this crusade, at least when he was in the federal court, he was looking at a 50-year sentence with a three-year consecutive sentence to serve on the Maryland case. Right. So he was looking at very significant time. I often wonder, does the state of Maryland ever even care about this additional little three-year? Clearly it doesn't. And, of course, the question that hovers over this case, with all respect to my dear state court colleagues, and I was one of them, as you well know, why any state judge anywhere in this country, under circumstances such as this, would impose a three-year consecutive sentence to a 50-year sentence? It just boggles the mind. Right. It absolutely boggles the mind. But that's what happened. And, again – And I alluded to it somewhat whimsically as ineffective assistance earlier, and I don't mean to cast aspersions on whatever the lawyer was who stood up with Mr. Woodfolk. I really don't. But, honestly, if you can't convince a judge of the state of Maryland that justice will be served by running a three-year violation of probation sentence concurrent with a 50-year federal sentence, then maybe you need to find another line of work, in all honesty. I don't care who it was. You brought up the point, and this is something I do not know the answer to, but I don't know at that VOP who he was represented by. I don't know if he represented himself. I understand that. It's not in the record. We don't have the record of that, do we? I don't. That proceeding is, to the best of my knowledge, never been transferred. Okay. Here's my question, under state law. Can you serve a period of probation while you're in custody of another state? You don't think so. I don't think so. You think a Maryland term of probation is told while you're in custody in another jurisdiction? Right. It is. I haven't briefed that. You haven't briefed that. You've never seen a case that held that. No, and I just reviewed the commitment order, and the commitment order that was just issued in the most recent modification, which was in December, says, upon release from physical incarceration. What's the commitment order? Pardon? What do you say is the commitment order? Which one are you talking about? That's the one that issued most recently in December of 2016. Mr. Woodfolk recently filed a motion to correct an illegal sentence, which was granted by the Circuit Court of Baltimore City, and a new commitment order is issued. He has served all his executed time according to the commitment order. This was issued last month? Correct. Okay. Correct. And, you know, it's been brought out in the papers for supplemental briefing. I do think there's an issue in this case, and if this case is remanded for a merits review, I think the district court will also have to revisit whether or not a person who's not in custody pursuant to the state court judgment, which he's challenging, needs to file a new petition for writ of habeas corpus. It is undisputed that at this stage Mr. Woodfolk is in custody pursuant to a different judgment than was challenged in his year 2013 petition. Now, as I've set forth in my supplemental briefing, there's differing case law as to whether or not when you get resentenced, whether that starts your federal habeas proceedings anew and you can challenge your underlying judgment or whether you can just challenge the resentencing. Oddly enough, although it wouldn't necessarily be the best position for the state, the position that the state would have to take to its greatest advantage against Mr. Woodfolk would not be the position the state would take generally. Generally, I think the state, if forced, would take the position if you're resentenced but you've already filed a prior federal habeas petition, you can only challenge that sentence. There's a split of circuit authority on that. But that's generally the position we would take, which would allow Mr. Woodfolk to go forward, but not necessarily everybody else who got sentenced. I do believe, I'm sorry, did somebody, I thought I heard somebody ask a question. You know, I don't want to belabor the points that have already been, I think, set forth in our brief. We do believe the position is time barred. Do you, to what extent, and I don't mean to put you on the spot, but I guess I do, what's the Attorney General's position on whether there was a conflict here? The Attorney General's position is that Mr. Woodfolk has not proven an adverse effect from the convoy, and our position is that was not litigated in the district court. So we would remand that. Are you saying you agree there was a conflict? I would agree that there was a, the record indicates that there was a multiple representation of. That's presumptive of a conflict. Right. What I believe that the record does not show is that there was an adverse effect. And you normally don't raise ineffective counsel until collateral challenges, not on direct appeal. In Maryland, when you plead guilty, you can raise ineffective counsel. You can, and you can in the federal system. I've even had one, I think, several years ago where we recognized a conflict on direct appeal. But as a matter of procedure, accepted procedure is direct appeal is not the place for an ineffective counsel claim, that those are raised in post-conviction remedies. Under Maryland state law, you can raise an ineffective counsel. You can, and you can, as I say, in the federal system. You can, but you don't have to. You don't have to, and you don't necessarily, you don't waive anything by waiting until the direct appeal's challenges are resolved. Well, under the Maryland statute, and as applied by Judge Russell in this case, he could have raised his conflict of interest in an application for leave to appeal his guilty plea, and the failure to do so, had he done so, he wouldn't, he hadn't gotten a read, considered, denied decision from the Court of Special Appeals, which is the typical way these are resolved. He still would have been able to present that claim in post-conviction review. It wouldn't have been finally litigated. But his failure to assert it on direct appeal affected a waiver in that case. But he never took a direct appeal. Correct. And how does a lawyer, how does a defendant represented by conflicted counsel even take a direct appeal? Right. I think if that were, in that scenario, you know, there's one of these. That was this scenario. Right. Well, one. He pled guilty. Right. Under the burden of a conflicted counsel, and the time to file a petition for leave to appeal elapsed, he got a new lawyer who looked at this thing and said, you've been screwed. And this new lawyer, who I don't mean to criticize, goes in before Judge Burns on a motion to modify sentence, and then permits himself to be persuaded by Judge John Carroll Burns to withdraw the motion for modification of sentence and file a melody, a so-called oral motion for a new trial. Which, of course, I shouldn't get started, but that's Baltimore. You want to get out tomorrow? Do this crazy thing. Take 18 months. Yeah, your lawyer was awful. Your lawyer was awful. He should know better. But let's just work this out. And you get out tomorrow. And he got out, and now he's serving 50 years. Right. Before he's about to finish serving. And go back to the ineffective assistant or conflict of interest claim. Then he goes on to challenge that October of 1988 plea and says he got a worse sentence then than he got in his original March of 1988 plea. Which, if he had a lawyer as good as he was as a jailhouse lawyer, and I agree with you, this is some of the best pro se stuff I've seen in a long time in this record. But he missed the point. He should have been challenging his conviction, not that he got a longer sentence, because that conflict of interest issue was still a viable issue. There's no question about it. Right. He could have filed at that state. I mean, the motion for reconsideration of sentence was then pending. He could have filed a motion for post-conviction. Did the state public defender ever get into the case at all? I don't believe so. He did all this on his own. Well, when this matter, fast forward to 2007 in the court of special appeals, he did act pro se. When it was remanded for November 2008, Benjamin Sutley, Jr. Right. Represented him before Judge Glynn. I don't know if he was acting as an assigned public defender. That's the first time he got a non-conflicted lawyer who understood the impact of the conflicted lawyer. Because the October lawyer, the October 88 lawyer, took the 18 months. And your argument here, I understand, your argument here is, well, when he took the 18 months, that conflicted counsel issue goes away. Right? That's your argument. Well, and I think it's indicative of Mr. Woodfolk's willingness to plead guilty on the facts. I mean, his ineffective assistance to counsel claim for the March of 1988 proceeding is that his counsel wasn't, was conflicted, was adversely affected by the fact he was representing himself and Mr. Langley. But, in fact, he ended up pleading guilty to an attempted murder charge, five years executed. And there really is no evidence in the record that Mr. Langley was going to testify against him. Well, the evidence in the record is Woodfolk's declaration. Well, you have the statement of the facts in October of 88, which shows the only witness that relied only on Officer Ledbetter. Yeah, but Woodfolk's declaration says his lawyer told him that Langley was going to testify against him. He did say that. That's evidence in the record. Well, I would say that the evidence at the time that he pled was, it's not like the State's statement of the facts in support of the police said Officer Ledbetter will testify to this and I think it's Michael Langley will testify that Mr. Woodfolk hasn't gone. He's not mentioned in that. The State never mentions all of its witnesses. The State's case that supported a factual plea did not mention Mr. Langley, which is one of the serious allegations of the conflict of interest. You said adverse interest. So as you responded to Judge King, if we reach the merits, you agree there was a conflict. No question about that. I guess I agree there was certainly the potential for a conflict. The appearance of a conflict. There's a presumption of a conflict. That's what we said in that case. I'm pretty sure. I wrote it, but I think we used the word presumption. But when you bring it up on post-conviction, you have to also prove adverse effect. Okay. Well, what's the relationship between proving adverse effect and the presumption of a conflict? I think you have to. On this record. Right. Make it this record. My lawyer told me, my lawyer who represented my co-defendant told me that I needed to plead guilty because the other guy was there. Right. The picture is painted. My lawyer did nothing. It looks like an adverse effect. I had two clients. I pled guilty. My other client got a stat. I went to jail. Well, the facts are that Mr. Woodfolk was the only one seen firing the gun. And the record does support, and I can cite citations. Did he actually fire the gun? Pulled the trigger. Pulled the trigger. Gun did not expel. Gun did not expel. At 298 of the appendix and 299 of the appendix, there's evidence that the attorney was actually doing work on his behalf and that they had some motions and the motions apparently didn't go to Mr. Woodfolk. Are those lawyers still around? As of the, there is evidence in the record that Mr. Vogelstein, who is the counsel at the March 88 proceeding, was contacted by Mr. Sutley. And I can't remember if this was the 2008. Did Mr. Vogelstein get disbarred? I believe that there were certainly accusations of that ilk. I don't know if he's been reinstated or he was actually disbarred. So he was disbarred. This is the same Vogelstein. Yeah, and I would allow, you could take judicial notice of that. I don't know if that's. I know that is in the record. I apologize for not knowing that. No, that's okay. But it certainly was alluded to the fact that he was. There's something in the record about him being involved with some sort of. I don't even want to misstate the record. It sounds like he was in some trouble and he may have been disbarred. And if he actually has been disbarred, that's. This is my last question. Then I'm going to be quiet because I've been not quiet enough, frankly. But part of what's going on here is if he prevails here and actually gets this 88 conviction vacated, it's not going to have any effect on his federal sentence at this point. Not his federal sentence, no. I mean, it's all about the principle, as one might say, right? I wish I had known this was going to a proceeding on a motion to correct an illegal sentence in November or December. I didn't. It got resolved how it got resolved. Because your office is in such great. I shouldn't be sarcastic or snarky. But the state's attorney for Baltimore City actually went into court, knowing all the work you put into this case in the district court, knowing that it was on appeal before us and a month ago, they go in the state court and you find out about it. How did you find out about it, by the way? I wish. I wish that were the scenario. I found out about it when counsel filed his letter. That's what I thought your answer was going to be. And I did look into it, and the attorney that handled it, and I had been in communication with her, no longer works for the state's attorney's office. She actually works for the attorney general's office. I talked to her. So you ran into her in the hallway. Well, I called her. You said, oh, by the way. No, no. I called her. I found out. I called her. What's going on? She linked me to the attorney who's sort of handling the case. And, frankly, he didn't even really know what was going on. Welcome to Baltimore City. And so, you know, I mean, it is what it is. I do think I don't want to make light of the arguments we've made in our brief because, fact of the matter, some of them have real significance on the limitations issues particularly. So I would say, you know, with respect, if this court reaches the issue of whether motions for reconsideration of sentence total limitations period, we're relying on the district court decisions that have found that they don't under Maryland, that the Maryland, those rule. The district courts have said that the Maryland rule 4345E motions do not total limitations period. They place heavy reliance on the 11th Circuit Baker versus McNeil opinion. And we believe that's the best reasoning as applied to the Maryland rule and that the Supreme Court's decision in Wall v. Coley deals specifically. It was very direct as to how it was applying its reasoning just specifically to the Rhode Island rules. And if it was revisiting the same, if this case made it to the Supreme Court and it was revisiting it, it would very look hard at the difference between the Maryland rule and the Rhode Island rule and determine that they are, like the 11th Circuit has held, quite different. Thank you. Unless there are any other questions, I would submit. All right. Thank you, counsel. Solic, you have some time reserved. May it please the court. I'd just like to make three quick points unless the court has further questions. With regard to Judge Davis' question of whether or not Mr. Woodfolk could have raised the ineffective assistance claim in his 2005 petition, which was eventually resolved in 2007, it's our contention that that claim, that he could not have raised an ineffective assistance claim with respect to this March 1988 conviction because at that point that conviction just didn't exist, Your Honor. It would be like raising, I don't know, saying that a ham sandwich was in my cell. And that's the same reason. It's a nullity at that point. So there's no way he could have challenged that during that time period. And with respect to the statute of limitations point that my friend just brought up, with respect to Wall v. Coley, he mentions the 11th Circuit decision of Baker v. McNeil. I just want to point the court to two other courts of appeals decisions holding it the other way and saying that there are very similar sentence reduction motions that do total limitations period. I believe they were under Wyoming law and also under the Massachusetts analog. And lastly, just touching to the merits point, my friend says that Mr. Woodfolk did not show an adverse effect because he showed a willingness to plead guilty again. But that's not the test under the standards here. The adverse effect is whether or not trial counsel, whether there were objectively reasonable tactics or strategies that could have been pursued but were not and that were tied to the conflict. And we state out at least three of them in our brief. Two and one that's sort of I think the most on point is that he could have gone to trial, that counsel could have gone to trial and raised self-defense or other sort of mitigating factors. And of course he didn't do that and it's our contention because of the tainted conflict. And if your honors don't have any questions, I'll reserve the rest of my time for it. Thank you very much. Thank you so much. We'll ask the clerk to adjourn court for the day and then we'll come down and greet counsel. This court is adjourned for tomorrow morning. God save the United States and this honorable court.
judges: Roger L. Gregory, Robert B. King, Andre M. Davis